G. SEELIGSON & CO. V. JAMES A. MITCHAM.

No. 2634.

1. **Evidence.**—A memorandum endorsed on a written contract by an attorney who negotiates for the contracting parties and prepares the writing, when made at the time of the contract, for the purpose of interpreting the meaning of the parties regarding a matter not expressed in the contract, though made without the knowledge of the parties in interest, may be referred to by him in evidence to show his understanding of their intention expressed at the time regarding the matter contained in the memorandum, and which is not contradicted by the terms used in the contract.

2. **Lien—Waiver.**—The taking of a new lien to secure a debt does not operate a waiver of the security afforded by the first lien, if the intention of the parties was to continue the first lien, either as primary or secondary security. The second lien will be regarded as an additional security for the debt, if no contrary intention appears.

ERROR from Henderson.    Tried below before Hon. F. A. Williams. The opinion states the case.

*Faulk & Faulk,* for plaintiffs in error. — 1. The court erred in permitting the witness W. T. Eustace to explain the meaning of the memorandum at the foot of the vendor's lien note, which said memorandum was written at the time of the transaction between plaintiff Mitcham and defendant Cotton, and in allowing the witness to put his construction on the memorandum instead of allowing the jury to say what it meant. Wells v. Groesbeck, 22 Texas, 429; Greenl. on Ev., sec. 268.

2. The court erred in permitting oral testimony to contradict or explain or vary the deed of trust from Cotton to Micham and the deed of trust note executed at the same time.

3. The holder of a vendor's lien note waives his vendor's lien by taking a deed of trust on other real estate as security therefor; and when the new security is taken the law presumes that the vendor's lien is waived, and the burden is on the holder of the note to show by the most cogent and irresistible circumstances that he did not intend to waive the lien. Parker County v. Sewell, 24 Texas, 238; 2 Story's Eq. Jur., sec. 1226; 2 Wash. on Real Prop., 3 ed., pp. 91–3, secs. 16, 17; Malone v. Kaufman, 38 Texas, 455; Brown v. Christie, 35 Texas, 690; Wasson v. Davis, 34 Texas, 166; Cannon v. Bonner, 38 Texas, 488; Jackson v. Hill, 39 Texas, 495; Cresap v. Manor, 63 Texas, 486.

*Richardson & Watkins,* for defendant in error. — 1. Witness Eustace did not contradict or vary any agreement, nor put any construction on the memorandum, but only explained the circumstances under which it was made and the purposes and objects of the same, and that it was no agreement between the parties, Mitcham and Cotton, and they knew nothing of it.

2. Additional security to a vendor's lien note can be taken without waiving the lien, and oral testimony is admissible to prove that the vendor's lien was not waived by taking the security, but retained. Cresap v. Moore, 63 Texas, 485; Favor v. Robertson, 46 Texas, 204; Ellis v. Singletery, 45 Texas, 27.

3. The doctrine that the vendor's lien is waived by taking other security applies only in cases of an implied equitable lien and not in cases where the vendor's lien is expressly retained in the deed. Rogers v. Blum, 56 Texas, 1; White v. Downs, 40 Texas, 231; Price v. Lauve, 49 Texas, 74; Williams v. Murphy, 36 Texas, 167; 3 Pom. on Eq. Jur., sec. 1259; Carr v. Thompson, 67 Mo., 472; Carpenter v. Mitchell, 54 Ill., 126; McCasland v. The State, 44 Ind., 151; Schworz v. Stein, 29 Md., 112; Bozeman v. Iby, 49 Ala., 75; Kinsley v. Williams, 3 Gratt., 265; Lusk v. Hopper, 3 Bush, 179.

STAYTON, CHIEF JUSTICE.—James A. Mitcham, the holder, brought this action against P. C. Cotton on a note executed by the latter to secure a part of the purchase money for lots 5 and 6, block 6, in the town of Athens, and to enforce a lien on the lots which was retained in the face of the deed through which the conveyance was made.

George Seeligson & Co. held a debt against Cotton secured by trust deed executed by Cotton on July 17, 1883, and with Cotton they were made defendants.

Cotton made no defense, but Seeligson & Co. alleged that the note for the purchase money for the lots was paid by Cotton on March 1, 1884, with money borrowed by him from Mitcham, and thus the lien was discharged. That firm further alleged that if the note sued on had not been paid the lien had been lost, in that on March 1, 1884, Cotton executed to Mitcham a new note covering the principal and interest on the note sued on, and gave a lien on other lands to secure its payment.

There was a judgment in favor of Mitcham.

There was a controversy upon the trial whether Mitcham bought the note sued on from the person who held it on March 1, 1884, or loaned to Cotton the money with which the latter paid it.

Seeligson & Co. contended that the latter was true, and that the trust deed executed to Mitcham on that day on other lands was given to secure the money then loaned by Mitcham to Cotton.

The evidence upon this point was conflicting, but the weight of the testimony sustained the proposition that Mitcham then bought the note from its holder, and that he did not make a loan of money to Cotton.

It appears, however, that Cotton did execute a trust deed to Mitcham on that day to secure a note then executed to Mitcham for a sum equal to the principal and interest then due on the note now sued on, and that trust deed embraced only a tract of land situated in Anderson County.

The evidence was conflicting as to the purpose for which the note and trust deed last referred to were executed—that offered by Seeligson & Co. tending to show that they were executed to secure the repayment of money loaned by Mitcham to Cotton, with which the latter paid the note sued on, or that there was a substitution of security through which the lien now sought to have enforced was relinquished; while that offered for the plaintiff tended to show that they were intended only as additional security, and that there was no intention to relinquish the lien on the lots for which the note in suit was given.

It appears that some question arose at the time the last note was executed as to whether the two notes should remain in the possession of Mitcham, each evidencing as they did an indebtedness of Cotton on the face of the notes, not shown to be the same.

W. T. Eustace, the person who prepared the trust deed and negotiated between the two parties as to all matters leading to the execution of that

and the note executed simultaneously, stated that Mitcham never agreed to lend to Cotton any sum of money, but did agree if the latter would give security other than that afforded by the lien on the lots, to buy the note so secured and to extend time for its payment, and that it was the agreement of the parties that the lien given by the trust deed should be an additional security.

He further stated that at his own suggestion, for the purpose of showing that the payment of one of the notes would satisfy both, and for the protection of Cotton, he made on the note sued on a memorandum, as follows:

"This note is held as security to secure the payment of one certain note for $280, dated March 1, 1884, due January 1, 1885, signed by P. C. Cotton, and payable to James A. Mitcham or bearer."

The evidence shows that neither Cotton nor Mitcham knew what the memorandum made on the note by Eustace was until after this action was brought, though it does show that they both may have known of Eustace's intention to make a memorandum which would show that Mitcham had no right to collect both notes.

The admission of the evidence of Eustace as to the agreement of the parties, and as to the purpose for which the memorandum was made, was objected to on the ground that this evidence varied or contradicted the writings. In signing bill of exceptions the court stated that "the witness did not state the meaning or sense of the language used, but the circumstances under which and the purpose for which the endorsement was made."

Appellants treat the memorandum as the evidence of a contract between the parties, and seek to subject it to the rule applicable to the admission of parol evidence to vary or contradict a written contract; but it seems to us that such is not its character. Neither party claims that it evidences any contract made between them, and both deny the existence of such a contract, as well as knowledge of what Eustace placed on the note until long after the memorandum was made.

As the matter stood we are of opinion that the court did not err in permitting the facts attending the transactions or the purpose desired to be attained by the making of the memorandum to be shown. The memorandum, it seems to us, had but little bearing on the question presented, and if given full effect would not better the position of appellants.

Appellants' first defense was that the note on which the memorandum was placed was paid, and that thus it and the lien to secure it ceased absolutely to exist. The memorandum contradicts that and shows that it was the intention to keep the obligation evidenced by the note alive, and with this would continue the lien to secure it unless in some way waived.

The second defense was that the lien on the lots was waived by taking

the lien on land in Anderson County. If it was the intention of the parties that the lien should continue on the lots, either as primary or collateral security, it was not waived.

If two notes be given by the same person to evidence the same debt, it can not be said that one may be held as collateral security for the other, for the security consists in the solvency and willingness of the maker to pay. If, however, two notes to evidence the same indebtedness be secured by liens on different property, the one lien, in a qualified sense, may be collateral, but if it could be held in this case that such was the character of the lien on the lots, the assertion of this by appellants would be destructive of both defenses urged by them.

That the two notes were given by the same person and to secure the same debt the great weight of the evidence shows, as does it that there was no abandonment of the lien on the lots; and the real inquiry was, did the parties intend that the lien on the lots should cease when the lien on the land in Anderson County was given to secure the same debt? This question was presented for the decision of the jury by a very clear charge, to which no objection is urged, and the finding was against appellants.

There was nothing in the second note or deed of trust which evidenced that the lien then given was not intended as an additional security for the sum then due and the interest which would accumulate at the maturity of the note, and the evidence of Eustace bearing on that question was not admitted in violation of the rule of evidence which appellants insist was infringed.

It is urged that the court erred in refusing to give a charge requested by appellants as to the burden of proof as to the continuance of the lien on the lots. If the charge asked was correct the court did not err in refusing to give it, for substantially the same charge as asked had been given by the court and there was no necessity for its repetition.

There was no prayer that securities held by appellee be marshaled, nor question made as to whether appellants had acquired any right superior to that held by appellee to enforce their lien on the lots, by reason of the fact that appellee may have surrendered his lien on the land in Anderson County after appellants acquired a lien on the lots, and with knowledge of that fact.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered October 22, 1889.