MAX MAAS ET AL. v. TACQUARD'S EXECUTORS.

Decided June 10, 1903.

**Vendor's Lien—Release—Waiver of Priority—Intention.**

Where a vendor's lien was superior to all other liens on the property, and the vendor executed to the vendee a release of the lien in which he acknowledged payment of the lien notes, but it was shown that the instrument was intended to operate only as a release of the original vendee from liability, and that notes were taken from one to whom he had conveyed the property, with lien given on the property to secure them, the priority of the lien was not lost or waived, as the intent of the parties will control.

Appeal from the District Court of Galveston. Tried below before Hon. W. H. Stewart.

*Lovejoy & Malevinsky,* for appellants.

*William T. Austin,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by Adolph A. Tacquard, as executor, and Faustine Tacquard, Emma Reitmeyer and her husband, W. F. Reitmeyer, as executrices of the will of Jacques Tacquard, deceased, against William Skirvin, James Sherwood, Edward Sherwood, Sarah Sherwood, Mary Smith and her husband, Milton Y. Smith, Max Maas as trustee and independent executor of the will of Sam Maas, deceased, and Nathan Redlich, independent executor of the same estate, to recover of the said Skirvin the sum of $5037.50, as evidenced by two promissory notes for $393.75 each, payable to Jacques Tacquard, said notes having been given for the purchase money of 175 acres of land, part of the Lemuel Crawford survey No. 39 in Galveston County; four promissory notes, one for $500 and three for $1000 each, executed by Skirvin to M. S. Waller, which were for part of the purchase money on the northwest block of outlot No. 82 in the city of Galveston, and which notes were transferred by Waller to appellees, and also a note for $750 executed by Skirvin to Jacques Tacquard; and to foreclose the liens set forth as to all the parties. The executors of the estate of Sam Maas claimed a first lien on lot 82, above described, for purchase money, and they asked for judgment against Skirvin for the sum of $2000, and for foreclosure of their vendor's lien on said lot. The court tried the case without a jury, and rendered judgment against Skirvin for the respective debts of the two estates, and decreed liens on the property described in favor of appellees, and that their lien on lot 82 was superior to that of the estate of Sam Maas.

It was admitted that Skirvin owed appellees the sums alleged in their petition, and that the debts were secured by liens as therein stated. On March 7, 1890, Sam Maas, now deceased, sold to J. C. League the northwest one-quarter of outlot No. 82, and in the deed conveying the property to League reserved a vendor's lien to secure two notes for $1000

each, given for the purchase money of the lot, and also at the same time took a trust deed on the land to secure the purchase money. League sold the land to William Skirvin, O. W. Shepherd and J. H. Mayers for $1666.66 cash, a note for $1333.34, and the assumption by them of the $2000 payable to Sam Maas. A vendor's lien was reserved in the deed as well as in a trust deed contemporaneously executed. The $1333.34 note was assigned by League to a loan and trust company, and default being made in its payment, the land was sold under the trust deed to M. S. Waller, trustee's deed reciting that Waller had paid $1200 in cash and had assumed the payment of the $2000 to Sam Maas due on the original purchase money. Waller afterwards sold the property to William Skirvin, the consideration being that Skirvin assumed the payment of the $2000 due Sam Maas, and Skirvin's notes to Waller for $4500. The vendor's lien was retained to secure the purchase money as evidenced by the notes. Waller transferred the notes for $4500 to Jacques Tacquard. The deed from Waller to Skirvin was dated January 18, 1892, and it was recorded March 23, 1892. On March 6, 1892, the following instrument in writing was executed and acknowledged by Sam Maas and filed for record:

"The State of Texas, County of Galveston. Whereas on the 7th day of March, 1890, J. C. League of Galveston County, Texas, did execute, acknowledge, and deliver to Max Maas, of Galveston County, Texas, a certain deed of trust, and the following described real estate, situate, lying and being in the county of Galveston in said State of Texas, to wit: That certain plot or parcel of ground known and described on the map of the city of Galveston by the Galveston City Company, as the northwest block of outlot eighty-two in the city and county of Galveston, State of Texas, to secure the prompt payment of his two certain promissory notes executed by the said J. C. League and payable to the order of Sam Maas as follows: One note for one thousand dollars, due March 7, 1891, one note for one thousand dollars, due March 7, 1892, and bearing interest from date at the rate of eight per cent per annum; and whereas said notes with accrued interest thereon have been fully paid, and at the time of such payment said notes were the property of Sam Maas. Now, therefore, know all men by these presents, that I, Sam Maas, of Galveston County, Texas, in consideration of the premises, and of the full and final payment of said notes, the receipt of which is hereby acknowledged, have this day and do by these presents remise, release, and quitclaim unto the said J. C. League, his heirs and assigns, the lien heretofore existing on said premises by virtue of said deed of trust, and do hereby declare the same fully released and satisfied. Witness my hand, this 6th day of March, 1895. Sam Maas."

On March 7, 1892, William Skirvin executed his promissory note to Sam Maas for the $2000 still unpaid, and to secure the payment of the same executed a deed of trust on outlot 82, described in release above copied. The $2000 evidenced by the last note was the original purchase money due on the lot. Sam Maas, William Skirvin and W. J. B. Moore

swore that the release was executed and new note taken merely to relieve League from liability, and that it was not intended to release the vendor's lien and to take new security for the debt, the change being made merely because League insisted that the original lien should be foreclosed. That testimony was not contradicted.

The only question at issue is, did the lien held by Sam Maas on the land lose its priority by reason of the release of the lien, the cancellation of the old debt, and the taking of a new note for the same debt and a lien on the same property?

The debt of $2000 due Sam Maas was for the purchase money of his land; it had never been paid, and up to the time that the release was executed was superior to all other liens on the land, and unless the release above copied destroyed its priority, it still holds precedence over all other liens. At the time that Tacquard bought the notes given by Skirvin to Waller he was affected with notice that Maas had a lien paramount to his own for $2000 on the land.

It was not shown when the notes were assigned to Tacquard, and the presumption would obtain that it was on day of date of notes, and consequently long prior to the time when the release was given by Maas, and the release, therefore, did not influence him in his actions. He knew he had only a second lien on the land. No question can arise therefore as to his rights and equities as an innocent purchaser.

There can be no doubt that, if nothing had been done but the taking of a new note and mortgage on the same land, the lien would still have been superior to all other liens. Bank v. Taylor, 91 Texas, 78. But in this case an instrument in writing has been executed reciting that the purchase money notes have been paid and the lien declared fully released and satisfied. That instrument, however, was intended and operated only as an extinguishment of the particular attributes of a vendor's lien, in order that League might be released from farther liability. All the parties to the instrument swear that it was intended for that purpose alone, and that it was not intended to release Skirvin in any manner so as to affect the security for the debt due by him. The fact that notes were immediately taken for the same debt from Skirvin, with a lien on the same land for security, substantiates the statements of the witnesses. No other security was taken, the only purpose of the release being to release League of liability and continue the same debt with the same security as to Skirvin. There could be no other reason assigned for the release, and it will not be presumed that Maas, without consideration and with no conceivable purpose in view, deliberately destroyed the priority of his lien and gave some one else a priority, that he knew had a lien second to his. It is true that it is recited in the release that the notes were paid, but they were not, and it is not so contended by appellees. The debt still exists, and the mere change in its form with a release of League from liability did not rob the lien of its priority and give precedence to the debt held by Tacquard.

The intent of the parties at the time the release was given must abso-

lutely control, and as the uncontroverted evidence shows that there was no intention to waive the lien, it must be held that it was not waived. Seeligson v. Mitcham, 74 Texas, 571; Pope v. Graham, 44 Texas, 196; Slaton v. Welborne, 78 Texas, 251; Ellis v. Singletary, 45 Texas, 37; Slaughter v. Owens, 60 Texas, 668.

The judgment of the lower court is affirmed as to Skirvin, but is reversed as to the Maas estate, and judgment here rendered that the lien of the estate of Sam Maas, deceased, is superior to that of the estate of Tacquard, and the lien of the Tacquard estate is foreclosed subject to a foreclosure in favor of the estate of Sam Maas.

*Affirmed in part; reformed in part.*