C. N. BASSETT ET AL V. N. B. SHERROD ET AL.

No. 1325.

**1. Judgment—Irregularities—Collateral Attack.**

See opinion and statement for judgment in trespass to try title and partition, obtained against unknown heirs on service by publication, and irregularities therein held not of a character which could avail in a collateral attack.

**2. Judgment—Unknown Heirs—Community—Interest of Widow.**

The community interest of a widow of the grantee of land was not affected by a recovery obtained in a suit against his unknown heirs (Heidenheimer v. Loving, 26 S. W. Rep., 101).

**3. Sheriff's Deed—Description of Land.**

A levy on, sale of and sheriff's deed to 426⅔ acres out of the S. W. side of a 640 acre survey of land was void for want of sufficient description, and would neither show title, nor serve as a basis for limitation, nor for a suggestion of improvements in good faith.

**4. Deed—Description of Land**

Such description, however, in voluntary deeds by such purchaser and subsequent vendees, where one-third of the north-east side of the 640 acre survey had been previously conveyed by metes and bounds, leaving title in the vendor to 426⅔ acres out of the south-west side, which fact was known to vendor and vendee, was not void for insufficiency of description, and would support limitation.

**5. Same—Improvements in Good Faith.**

Defendants, holding under such sheriff's and subsequent voluntary deeds, could establish claim for improvements in good faith only as to such as were placed on the land after they might believe that they had title by limitation under the voluntary conveyance, they being charged with notice of the want of title under the void sheriff's deed.

APPEAL from Brown County. Tried below before Hon. J. O. WOODWARD.

*Goodwin & Grinnan,* for appellants.

*Wilkinson & Rice*, for appellees.

No briefs have reached the Reporter.

FISHER, CHIEF JUSTICE.— *Statement of Case.*—This is an action of trespass to try title, by appellants, to recover the C. N. Bassett survey of 640 acres of land, situated in Brown county. Appellees, W. C. White, Noah Sherrod and J. C. Vandevener each answered not guilty, and each disclaimed title to said land except 201⅓ acres, which quantity each of the defendants claim to own out of said survey, and each set up title to 201⅓ acres of said survey, describing it in their respective answers. Each pleaded the three, five and ten years statutes of limitations, and each pleaded improvements in good faith. The case below was tried before the court without the aid of a jury, and upon the facts and conclusions of law as found by the trial court it rendered judgment in favor of appellees for the entire survey of 640 acres, and that the plaintiffs take nothing by this suit.

We find the following as the facts in the case:

1.  The land in controversy was, on the 30th day of July, 1860, patented by the State of Texas to Clement N. Bassett. The patent recites that it was based on "unconditional certificate No. 352, issued by the Board of Land Commissioners of Harris County on the 7th day of April, 1845."

2.  The land was patented by virtue of unconditional certificate No. 352 for 640 acres of land, issued by the Board of Land Commissioners of Harris County, April 7th, 1845, and the certificate recites that Clement C. Bassett "arrived in the Republic of Texas prior to 1841, and that he has been a resident citizen up to the present time and that he is a married man."

3.  That C. N. Bassett, Sr., the patentee, was married to his wife Julia Bassett, some time prior to 1842. That C. N. Bassett, Sr., died some time in the year 1849. That he had two children, Winifred, a girl, and C. N. Bassett, Jr., a boy, both born prior to 1843. That he left surviving him at his death these two children, and Julia Bassett, his widow. That C. N. Bassett, Jr., is living and one of the plaintiffs in this suit. That Winifred Bassett in July, 1854, married George H. Chambers; that of this marriage there was one child, Wm. J. Chambers. That Winifred Chambers is dead; that she died some time in the year 1870. That her husband George H. Chambers is also dead; that he died some time in the year 1880. That Wm. J. Chambers is dead; that he died in November, 1882, at the age of about 26 years, and that he was never married.

That Julia Bassett, the widow of C. N. Bassett, Sr., was married a second time; that she married Thomas Smith in the year 1854; that of the marriage of Thomas Smith with Julia Bassett there were born four children. That Thomas Smith died in the year 1889, and his wife Julia died in May, 1888. That they both died intestate, and there has never been any administration on either of their estates.

Some of the plaintiffs are heirs of C. N. Bassett, Sr.. Some are heirs of Mrs. Julia Smith, and some are the heirs of Wm. J. Chambers.

4.    The land in controversy was the community property of C. N. Bassett, Sr., and his surviving wife Mrs. Julia Smith.

5.    In March, 1875, J. W. Lawrence filed suit in the District Court of Harris County, Texas, against S. S. Thompkins, a resident of Harris County, Texas, and the unknown heirs of C. N. Bassett, and the unknown heirs of a number of other persons, and against certain named defendants, non-residents of the State, seeking to recover a judgment against said parties for an undivided one-third interest in the land in controversy and other lands described in the petition filed in that suit, and for a partition of said lands.    The plaintiff Lawrence, in that suit, resided in Travis County, Texas, and none of the lands described in that suit were situated in Harris County, Texas.    The record in that case shows service by publication on all of the defendants except S. S. Thompkins, who appeared by answer and disclaimed as to the land sued for, and there was a judgment against him for the land and in his favor for costs.    The record shows that the unknown heirs, defendants in that suit, were represented by an attorney appointed by the court.    The unknown heirs of C. N. Bassett, at this time, were residents of the State of Texas.    Mrs. Smith, the surviving wife of C. N. Bassett, was not a party to that suit, and no judgment was rendered against her.    November 3, 1875, the District Court of Harris County, in that suit, rendered a judgment against all of the parties defendant to that suit except Thompkins, in favor of Lawrence, for an undivided one-third interest in all the lands in controversy in that suit, including one-third of the land here sued for, and rendered joint and several judgment against all of the defendants for the costs.

Said district court thereupon appointed commissioners to divide and partition the land in controversy, together with other lands in that suit, and they filed their report of partition, in which was set aside and partitioned to the plaintiff in that suit, J. W. Lawrence, one-third of the survey in controversy, which one-third was defined by metes and bounds.    A decree was rendered on said report and it was in all things confirmed, and decreed title in Lawrence to the one-third that was set apart to him.    The judgment in that cause recites that the defendants were duly cited, and appeared by A. R. Masterson, attorney appointed by the court to represent said unknown heirs.

6.    It does not appear from anything contained in the record before us that any of the parties defendant to that suit had any interest or title to the land in controversy except the heirs of C. N. Bassett.

C. N. Bassett, Jr., one of the appellants in this suit, and Wm. J. Chambers, the son of Winifred Chambers, the deceased daughter of C. N. Bassett, Sr., were the only heirs of C. N. Bassett, Sr., at the time that suit was filed and the judgments and decrees were rendered, that had any interest in his title to the land in controversy.

7.    July 24, 1876, J. W. Lawrence and M. W. Garnett conveyed

to W. G. Simmons by deed with field notes the same land—213⅓ acres— that was set apart and decreed to Lawrence in the partition suit heretofore described, which deed was filed for record in Brown County, January 10, 1887, and duly recorded September 1, ·1888.

8.   There is evidence that shows that prior to June 8, 1876, an execution for the costs of the partition suit heretofore mentioned was issued out of the District Court of Harris County, Texas, directed to the sheriff of Brown County, which execution we find the evidence shows was issued in suit No. 9242—J. W. Lawrence v. J. Buck et al., and we find that J. Buck was a defendant in said partition suit and that its number was 9242.   We also find that the style and title of the suit in the District Court of Harris County was J. W. Lawrence v. S. S. Thompkins et al.   We find that the original execution has been lost or destroyed. We find from the sheriff's return that the execution came into his hands June 8, 1876, and he executed same by levying upon lands that constituted a part of a number of surveys which in the return he describes as the property of the "defendants," and the return shows that said levy was made in part on "426⅔ acres out of the S. W. side of the C. N. Bassett survey, No. 292, 640 acres of land."   The return also shows that this land, 426⅔ acres, was sold to L. R. Knight·for $51, and that he was the highest and best bidder, and that he paid his bid.   On the 4th day of July, 1876, the sheriff of Brown County executed to L. R. Knight a deed conveying "426⅔ acres of land out of the S. W. side of the C. N. Bassett survey, No. 292, of 640 acres, in Brown County." The deed recites that "the execution issued out of the District Court of Harris County on the 25th day of April, 1876, in favor of Jno. W. Lawrence v. the unknown heirs of John Seaman et al., commanding the sheriff of Brown County of the goods and chattels, lands and tenements of the said unknown heirs of John Seaman et al., to make certain moneys in said writ specified;" said deed also recites that the sheriff did levy upon and seize all the right, title and interest of the defendants in said premises, and did sell and convey to said Knight all the right, title and interest of defendants in said land.

We also find that John Seaman was one of the defendants in the partition suit aforesaid.

This deed was filed for record in Brown County, July 5, 1876, and duly recorded July 6, 1876.   The evidence that tends to show that an execution was issued and the return of the sheriff in making the levy of the writ and the deed executed by him does not mention the name of C. N. Bassett or require or command the sheriff to levy upon any property of the unknown heirs of C. N. Bassett, nor does such return or sheriff's deed show that the levy was made upon the property of the unknown heirs of C. N. Bassett, or that the property of the unknown heirs of C. N. Bassett was sold.   All that tends to establish a sale of the property of such unknown heirs is stated as heretofore quoted from said return and sheriff's deed.

9.   July 7, 1876, L. R. Knight, by quit claim deed, conveyed to W.

F. Hightower "426⅔ acres of land out of the S. W. side of the C. N. Bassett survey, No. 292, of 640 acres of land in Brown County, Texas, about six miles from the town of Brownwood." This deed was filed for record July 7, 1876, and duly recorded in Brown County July 8, 1876.

10.  January 10, 1877, W. F. Hightower, by quit claim deed, conveyed to J. T. Simmons the land as described in the foregoing deed with the identical description. This deed was duly recorded in Brown County January 10, 1877.

11.  October 17, 1877, J. T. Simmons executed a quit claim deed to 213⅓ acres of land out of the center of the C. N. Bassett survey, No. 292, 640 acres, in Brown County, about six miles S. W. from the town of Brownwood." The record does not show any grantee in this deed. It was duly recorded in Brown County October 17, 1877.

12.  July 29, 1881, J. T. Simmons, by quit claim deed, conveyed to W. G. Simmons "426⅔ acres of land out of the S. W. side of the C. N. Bassett survey, No. 292, of 640 acres, in Brown County, about six miles S. W. from the town of Brownwood." This deed was duly filed for record December 29, 1881.

13.  W. G. Simmons died in 1886 intestate, and April 6, 1887, W. C. White was duly appointed and qualified as administrator of his estate. By order of sale the administrator, July 17, 1890, conveyed by deed to J. C. Vandevener 640 acres, the C. N. Bassett survey, the land in question. This deed was filed for record September 12, 1892, and duly recorded in Brown County October 12, 1892.

14.  September 30, 1890, J. C. Vandevener, by deed, conveyed to W. C. White land described as follows: "All that certain tract of land situated in Brown County on the waters of Pecan Bayou, and is a part of the Clement N. Bassett 640 acre survey, No. 292, certificate No. 352. Beginning at a stone mound in the N. E. line of said C. N. Bassett survey 633⅓ vrs. from its north corner, from which a L. O. brs. N. 55, W. 16½ vrs., and a L. O. brs. N. 88, E. 23 vrs. for the S. W. corner of the survey; thence S. E. 1900 vrs., a stake from which a P. O. brs. N. 85, E. 8½ vrs., and a P. O. brs. N. 47, W. 19¾ vrs., for the south corner of this survey; thence N. W. 1266⅔ vrs. and corner; thence N. E. 1900 vrs. to place of beginning." This deed was filed for record September 12, 1891.

15.  September 15, 1891, W. C. White and wife, by deed, conveyed to N. B. Sherrod the following described portion of the C. N. Bassett survey: Beginning at the south corner of said Bassett survey; thence N. 45 E., with line of said Bassett survey, 633⅓ vrs.; thence S. 45 E. 1900 vrs.; thence S. 45, W. 633⅓ vrs. to corner of Bassett survey; thence N. 45, W. 1900 vrs. to beginning. This deed was filed for record September 12, 1892.

16.  The record shows that the parties to this suit admitted that J. C. Vandevener and those under whom he claims the N. E. one-third of the Bassett survey have had possession of that portion of said survey

since 1876, using, enjoying and cultivating the same and paying all taxes thereon, which one-third is the interest awarded to Lawrence in the partition suit aforesaid, and that Vandevener heard of no adverse claim to said land.    The record shows that the parties admitted that the portion of land claimed by defendant W. C. White, who owned by W. G. Simmons, was used as follows:    From 1877 W. G. Simmons had a hog pen built on said portion of said survey, it was made of rails and was about 15x15 square, and was used by him up to the time of his death in 1886 for feeding, altering and marking his hogs.    In 1878 a son-in-law of Simmons, by his consent, built on this part of the land a rock pen of loose rock, about 14x14 feet square, and that he covered it with a wagon sheet, and lived in it about one year with his family; and he also fenced a small garden and cultivated it.    When he left the pen it was unoccupied for a year, and then another party, with the consent of Simmons, covered the pen with a tent and occupied it for about one year and then left, and since then the pen has never been used.    V. G. Simmons got fire-wood off said land and used the grass for grazing purposes from 1877 up to his death in 1886.    Vandevener fenced the land in 1891.    W. G. Simmons claimed the whole of the Bassett survey, and so did his administrator after his death.    It is admitted that the portion of the land claimed by defendant Noah Sherrod was used by J. T. Simmons in 1877 while he owned it, as follows:    He built a house on a part of said land and fenced in fifty or sixty acres and cleared and put in cultivation about thirty-five acres of the enclosed land.    J. T. Simmons lived on the place one or two years after improving it, and then moved from the land and cultivated by tenants to the time he sold to W. G. Simmons, in July, 1881.    After the purchase by W..G. Simmons he continued to rent the land to tenants for a part of the crop until the time of his death.    After his death his administrator rented the land to tenants up to the time it was sold to Vandevener, July 17, 1890.    Immediately after purchasing, Vandevener sold said land to W. C. White, who rented the fenced, improved portion to tenant until September 15, 1891, when he sold to N. B. Sherrod, who went into possession of said southwest third and has occupied it since.    It is admitted that the taxes have been paid on the portion of land by the several owners and claimants thereof from 1878 to time of filing this suit.    Simmons, his tenants and Sherrod used fire-wood off the uninclosed portion of this land, and their stock grazed thereon.    We find that this suit was brought on July 28, 1891, and that the defendants and those under whom they claim have paid taxes on the land since 1877.

On the issue of improvements we find the facts to be as admitted on pages 44 and 45 of the record.

*Opinion.*—It is not necessary that we should take up and consider all the objections urged by appellants to the judgment of Lawrence v. Thompkins et al. and the decree of partition between those parties, in so far as it affects the heirs of C. N. Bassett, as, in our opinion, none of

the objections are tenable, and are of a character which can not be urged collaterally against these judgments. The defects pointed out are mere irregularities, which may have been corrected on appeal but do not render the judgment void. The judgment and decree of partition were valid and binding against the heirs of C. N. Bassett, and as against them established title in Lawrence, the defendant's vendor, for one-third of the land, and as the decree of partition defines by metes and bounds this interest, it is held that as against such heirs the specific land so set apart to Lawrence was conveyed to him. This judgment and decree did not affect the community interest of Mrs. Smith, formerly the wife of C. N. Bassett, in this land. She was not a party to that judgment, and as she was not an heir of Bassett as to her community interest in the estate, her right as to her half interest in the land was in no wise litigated or interfered with or disturbed by that judgment. Heidenheimer v. Loring, 26 S. W. Rep., 101. Therefore the appellants who claim as her heirs are tenants in common with the vendees of Lawrence, and while the interest of Lawrence may be held in severalty as to the heirs of Bassett, such would not be the case as to the heirs of Mrs. Smith, and as to them the interest would be held subject to a disposition by a decree of partition between the tenants in common.

It is not necessary that we should pass upon all of the objections urged to the execution sale and deed of the sheriff of Brown County to the purchaser Knight at the execution sale, as we are prepared to hold that such sale is void for the want of a sufficient description of the land intended to be conveyed. The description of the land in this deed is not any more definite and certain than was the case in the tax collector's deed which was held by the court, in Wofford v. McKinna, 23 Texas, 37, to be void for uncertainty of description. A similar ruling was made in Wooters v. Arledge, 54 Texas, 397, where it seems the description was about as certain as that in the deed in question. See also Norris v. Hunt, 51 Texas, 612; Pfeiffer v. Lindsay, 66 Texas, 124. Therefore we hold that the deed in question was void for the want of a sufficient description, and this not alone as to title, but that it will not serve as the basis of a plea of limitation or a suggestion of improvements in good faith.

But while some of the deeds made subsequently by Knight to Hightower and from him and his successive vendees down to the present defendant contain the same description, we are of the opinion that by reason of the difference in the rule that exists in construing deeds executed under forced sales and those executed between individuals, and in view of the principle which we think should be applied in this case that, as between individuals, some interest is supposed and was intended to pass, and to accomplish this effect extrinsic facts may be looked to in order to aid the description, we have concluded to hold that such deeds are not void for insufficient description. The facts in the record show that the vendees of the defendant claimed and asserted title to the land

under the sheriff's deed, and although, in fact, such deed was and is void, the assumption is warranted that when the defendants' vendors, from Knight down, executed their several deeds, they intended to convey the quantity of land stated in such deeds, and when we look to the title of Lawrence then existing which was known to Knight and his vendees it is clearly shown that one-third off of the N. E. side of the survey of 640 acres was already conveyed, which would leave in the survey, undisposed of, approximately the quantity of land called for in the deed from Knight to Hightower and from him to his vendees and so on down. If we take into consideration this fact as showing that at the time these deeds were executed there existed, remaining in said survey, only about 426 acres, the quantity called for in the deeds, we may then conclude that it was the intention to convey all of that quantity and the entire balance of said survey. With this intention in view, which we are authorized to consider by reason of such extrinsic facts, which was also evidently the way the parties at that time considered and intended, we may commence on the southwest side of said survey and, giving the quantity called for, include all of the land not previously acquired by Lawrence. Hence we think the deeds from Knight down successively to his vendees convey all of the survey except what had been previously acquired by Lawrence. As the sheriff's deed is void and thereby there is existing a break in the title under which the defendants claim, except as to the interest acquired from Lawrence, the consideration of these deeds only becomes important on the issues of the five and ten years periods of limitation and improvement in good faith. And for this purpose they may be considered as to the undisposed of interest in the land which remained in the heirs of C. N. Bassett.

The interest of the plaintiffs they acquired as the heirs of Mrs. Smith is not affected by limitation, because when the adverse possession, if any, commenced she was a married woman, and as she continued a married woman until her death, which was in May, 1888, five years from that time had not elapsed before the filing of the suit. The original petition was filed July 28, 1892. This ruling would not apply to that portion of the estate that Mrs. Smith inherited from her deceased grandson, Wm. J. Chambers, if adverse possession commenced during his lifetime. Concerning the question of improvements in good faith, we express the opinion that, as the defendants, except as to the land conveyed to Lawrence, held under a conveyance which is void on its face, they must be put upon notice of want of title, and if such is the case they could not be possessors in good faith unless the improvements were placed upon the land after the execution of the deeds under which they assert limitation, and this after such a length of time and under such circumstances as would lead them, as men of ordinary prudence, to believe that they had a right by limitation, although in fact it may be ultimately determined that under the evidence they were not entitled to recover under their pleas of limitation. In other words, if the defendants in good faith believed they had acquired a right to the land by

limitation and then placed the improvements thereon, under the liberal rule that prevails in this State upon that question, we think they would be entitled to recover on that issue.

From these views we reach the following conclusions:

1st.   That one-third of the survey is owned by the vendees of Lawrence.

2d.   That the remaining portion of said survey is the property of the heirs of Mrs. Smith and of the heirs of C. N. Bassett, and that such interest may be only defeated under the plea of limitation as explained in this opinion, and may be charged with improvements in good faith in the way pointed out, if warranted by the evidence.

Therefore we reverse and remand the case, with instructions to the trial court to proceed in accordance with the views expressed in this opinion and to render judgment in accord herewith, litigating only the questions of limitations and improvements in good faith together with any question of partition that may be raised if the parties make that an issue upon another trial.   Holding that the defendants did not acquire title under the execution sale makes it unnecessary to pass upon the other questions in the record that are not noticed.

Judgment is reversed with instructions.

*Reversed and remanded.*

Decided April 15, 1896.

Application for writ of error was dismissed for want of jurisdiction.