**BANKERS' MORTG. CO. v. HIGGINS et al.**
(No. 9030.)

Court of Civil Appeals of Texas. Galveston.
Dec. 20, 1927.

Rehearing Denied March 1, 1928.

1. **Appeal and error** ⚖═747(3)—**Objection to cross-assignment of error as not filed in trial court will be overruled, where only showing of want of filing is assertion in brief.**

Objection to consideration of cross-assignment of error on ground that it was not filed in trial court will be overruled, where the only showing that the cross-assignment was not filed is assertion of that fact in appellant's supplemental brief, since cross-assignments need not be incorporated in transcript.

2. **Appeal and error** ⚖═747(3)—**Cross-assignments of error need not be incorporated in transcript.**

Law does not require that cross-assignments of error should be incorporated in transcript on appeal.

3. **Deeds** ⚖═38(8)—**Deed conveying portion of tract described as lying just south of specified tract held not void for uncertainty of description, where land was identifiable by reference to record.**

Deed conveying 140 acres out of 200-acre tract described as lying just south of south line of 520-acre Higgins tract, with south line of Higgins tract constituting north line of 200-acre tract, *held* not void for uncertainty of description of land conveyed, where such land could be identified by reference to record.

4. **Deeds** ⚖═38(1)—**Deed is not void for uncertainty of description, if land can be located from it.**

Deed is not void for uncertainty of description of land conveyed, if land can be located from description in deed.

5. **Vendor and purchaser** ⚖═265(2)—**Recorded deeds reciting vendor's lien securing purchase-money notes charge subsequent purchaser with notice of lien.**

Duly recorded deeds reciting vendor's lien retained to secure purchase-money notes charge subsequent purchaser of land with notice of lien.

6. **Vendor and purchaser** ⚖═265(1)—**Purchaser, taking possession with knowledge of purchase-money note executed by predecessor and lien securing it, holds in privity with predecessor's vendor and consistently with his rights.**

Where purchaser goes into possession of land with knowledge of purchase-money note executed by his predecessor and of lien securing it, and that it must be paid, he holds in privity with predecessor's vendor and consistently with rights of such vendor or holder of such note.

7. **Adverse possession** ⚖═63(7)—**Purchaser, taking possession with knowledge of purchase-money notes executed by his grantor and lien securing them, could not secure title by adverse possession, where not repudiating subordinate relation. (Rev. St. 1925, arts. 5509, 5510).**

Purchaser, who went into possession of land charged with knowledge of purchase-money notes executed by his predecessor and of lien securing them, *held* not to secure title by adverse possession under 5 and 10 years' statutes of limitation (Rev. St. 1925, arts. 5509, 5510), as against predecessor's vendor and those holding under him, where he did not repudiate relation of privity with predecessor's vendor and of subordination to his rights.

8. **Homestead** ⚖═213—**Defendant in trespass to try title, who did not plead homestead rights, might not assert such as defense.**

Where defendant in trespass to try title did not plead directly or indirectly that land was homestead of himself and wife when he executed deed thereto, he might not assert homestead rights as a defense.

Graves, J., dissenting on rehearing.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

Suit in trespass to try title by the Bankers' Mortgage Company against Johnson Higgins and another, who asserted title. From a judgment in favor of defendants, plaintiff appeals. Reversed and rendered.

Harry Holmes, of Houston, and A. R. Rucks, of Angleton, for appellant.

J. T. Loggins, of Angleton, and John B. Warren, of Houston, for appellees.

LANE, J. The Bankers' Mortgage Company brought this suit against Johnson Higgins and A. F. Purdy on the 1st day of August, 1925, in the usual form of trespass to try title, praying for a recovery of the title and possession of a certain 75 acres of land described in plaintiff's petition as follows:

"75 acres of land out of the John McCloskey league, in Brazoria county, Texas, described as follows: Beginning on Cedar Lake at the S. W. corner of the Higgins 529-acre tract; thence N. 45 deg. along the S. line of the Higgins 529-acre tract to the S. E. corner thereof, and the S. E. corner of the Ben Ward tract; thence

S. 45 deg. E. 173 vrs. to a stake at G. T. Higgins N. E. corner; thence S. 45 deg. W. along the N. line of the Higgins and Ben Ward lands to Ward's N. W. corner on the bank of Cedar Lake; thence northwardly meandering said Cedar Lake to the place of beginning, containing 75 acres of land."

The plaintiff also alleged title to the land under the 3, 5, and 10 years' statutes of limitation (Rev. St. 1925, arts. 5507, 5509, 5510). Defendants answered, by general demurrer, general denial, and plea of not guilty. They also specially pleaded title under the 5 and 10 years' statutes of limitation to 75 acres of land described as follows:

"Seventy-five (75) acres of land situated on Cedar Lake in Brazoria county, Texas, and in the McCloskey league, being a part of the Steven Winston homestead tract and out of the two hundred (200) acre tract, which was partitioned between Annie C. Winston and H. Masterson, by order of the district court of Brazoria county, Texas, at its November term, 1883, and being the same seventy-five acres of land set apart to Annie C. Winston in said partition decree: Beginning on Cedar Lake at the S. W. corner of the Higgins 520-acre tract; thence in an easterly direction following the south line of said Higgins tract to the S. E. corner thereof; thence in a southerly direction along the back or eastern boundary line of said two hundred (200) acre tract to a point from whence a line drawn in a westerly direction and parallel with the lower line of the said Higgins' 520-acre tract to Cedar Lake; thence up Cedar Lake with its meanders thereof to the place of beginning, so as to include seventy-five (75) acres of land, and being the same land conveyed by Annie C. Winston to Lucretia Higgins, by deed dated March 12, 1885, filed for record April 10, 1885, and recorded in volume X, p. 305, of the Deed Records of Brazoria County, Texas."

By supplemental petition, plaintiff alleged that the occupancy of the premises described in the defendants' answer by virtue of which they claim title thereto by limitation was permissive only and not adverse to the holder of the record title, in that defendant Johnson Higgins took and held possession of said premises in subordination to the title of plaintiff and its predecessors in title.

Plaintiff further alleged that defendants were estopped to claim said premises under the statutes of limitation, in that plaintiff's predecessor in title, South Texas Development Company, purchased the premises from H. Masterson, and the defendant Johnson Higgins, by virtue of whose occupancy limitation title is asserted by defendants, acknowledged that said premises were owned by plaintiff's predecessors in title and stated that he desired to rent the same, and thereafter became the tenant of plaintiff's predecessor in title, and as evidence that he did not claim any interest in the land he executed and delivered to plaintiff's predecessor in title a deed of conveyance to said land. By supplemental answer, defendants denied generally the allegations of the plaintiff's supplemental petition.

It was shown that William Winston was in 1854 the owner of 800 acres of land in Brazoria county, a part of the John McCloskey league, known as the former home place of Joseph Reese. By partition decree of the district court of Brazoria county, 200 acres of the 800 acres above mentioned was set aside to John A. and Annie C. Winston in equal portions; said 200 acres being described in said decree as follows:

"Beginning on Cedar Lake at the southwest corner of the Higgins 520-acre tract of land; thence in an easterly direction along the lower or south line of said Higgins tract; thence in a southerly direction such a distance that a line drawn westerly parallel with said lower line of the Higgins tract to said Cedar Lake; thence up Cedar Lake with its meanders to the place of beginning, will include and embrace within said lines 200 acres of land."

On the 9th day of July, 1883, John A. Winston, by his deed of that date, conveyed to H. Masterson land described as follows:

"An undivided one-fourth (¼) of 200 acres out of the J. McCloskey league, which was set apart to us by the district court of Brazoria county, Texas, May term, 1883, by decree of John A. Winston v. Stephen P. Winston et al., No. 2909. See pages 511 and 514 of the minutes of the district court."

And on August 27, 1883, he conveyed to H. Masterson his remaining one-fourth interest in said 200 acres, describing the same as follows:

"An undivided one-half (½) of 150 acres out of the J. McCloskey league, being my own ½ of ½ of 200 acres out of the Winston plantation on Cedar Lake after deducting 50 acres heretofore deeded to said H. Masterson, out of said 200 acres by myself and Annie C. Winston, said 75 acres hereby conveyed is my portion of the 200 acres, which was set apart to Annie C. Winston and myself, or to our father, S. P. Winston, by decree of the district court of Brazoria county, Texas, at May term, 1883, in suit entitled John A. Winston v. S. P. Winston et al., No. 2909."

In a suit brought by H. Masterson against Annie C. Winston on the 16th day of November, 1883, praying for a partition of the above-mentioned 200 acres of land, a decree was rendered setting aside to Annie C. Winston 75 acres out of the said 200 acres, describing the same as follows:

"Beginning on Cedar Lake at the S. W. corner of the Higgins 520-acre tract of land; thence in an easterly direction following the lower or south line of said Higgins tract to the S. E. corner of said Higgins tract; thence in a southerly direction along the back or eastern boundary line of said 200-acre tract to a point from whence a line drawn in a westerly direction and parallel with the said lower line of the said Higgins 520-acre tract to Cedar Lake; thence up Cedar Lake with the meanders thereof to the place of beginning so as to include

and embrace within the above-specified bounds the said Annie C. Winston three-eighths interest or 75 acres of land out of the afore-described 200-acre tract of land."

And setting aside to H. Masterson 125 acres of said 200 acres, describing the same as follows:

"Bounded on the upper or north side by the lower or south line of said 75-acre tract of said Annie C. Winston, on the back or eastern end, by the back or eastern line of the afore-described 200-acre tract on the lower or southern side by the lower or southern line of said 200-acre tract above described, on the front or lake side by Cedar Lake, containing within said bounds 125 acres of land."

On the 17th day of March, 1885, Annie C. Winston conveyed to Lucretia Higgins the 75 acres set aside to Annie C. Winston in the decree above mentioned, and in the deed of conveyance the 75 acres is accurately described as it was in said decree. In part payment for the land, Lucretia Higgins executed and delivered to Annie C. Winston three promissory vendor's lien notes for the aggregate sum of $375, bearing interest at the rate of 8 per cent. from date until paid. The three notes before mentioned were transferred to and became the property of H. Masterson, and were in full force and effect from the time of their execution and delivery to the 5th day of January, 1892, at which time H. Masterson brought suit against the maker and her husband, and Johnson Higgins, appellee here, who was claiming title under Lucretia Hawkins, formerly Lucretia Higgins, to foreclose his vendor's lien against said 75 acres of land. Judgment was rendered in said suit as prayed for, and order of sale was duly issued thereon, and the land was sold thereunder to H. Masterson on the 1st day of March, 1892, and a deed was made by the sheriff making such sale, conveying said 75 acres to H. Masterson, in which the land is described as follows:

"75 acres of land situated on Cedar Lake in Brazoria county, Texas, being a part of the Stephen Winston homestead tract of 200 acres and 75 acres are out of said 200-acre tract which was partitioned between Annie L. Winston and H. Masterson by order of the district court of Brazoria county, Texas, at its November term, 1883, and is the same 75 acres set apart to said Annie C. Winston in said partition; said 75 acres described by metes and bounds as follows: Beginning on Cedar Lake at the S. W. corner of the Higgins 520-acre tract of land; thence in an easterly direction following the south line of said Higgins tract to the S. E. corner of said Higgins tract; thence in a southerly direction along the back or eastern boundary line of said 200-acre tract to a point from which a line drawn in a westerly direction and parallel with the lower line of the said 520-acre tract to Cedar Lake; thence up Cedar Lake with the meanders thereof to the place of beginning, so as to include within the specified bounds 75 acres of land, and for fuller description thereof reference is made to the partition

of said 200 acres out of which said 75 acres is taken as the same appears in the minutes of the district court of Brazoria county, Texas, in pages 5180, 5181, and 5182 of said court minutes."

Napoleon Higgins, the father of Johnson Higgins, died in 1885, and Lucretia married one Hawkins. Lucretia Hawkins died in 1916. Johnson Higgins was the only child of his parents. Shortly after Lucretia Higgins purchased the 75 acres in 1883 and executed the notes above mentioned, she made a verbal gift of the land to defendant Johnson Higgins, and he moved on the same and continued to live thereon under such gift, except for a period of years, and during such period he was in possession thereof by tenants up to the time this suit was filed, but never at any time did he advise Masterson that he claimed the land adversely to him, or repudiate the possession under which he entered.

On the 18th day of September, 1905, H. Masterson conveyed, together with two other tracts of land, 140 acres of land lying in Brazoria county, Texas, to the South Texas Development Company, which was described in said conveyance as follows:

"140 acres out of the following described 200-acre tract: Beginning on Cedar Lake at the S. W. corner of the Higgins 520-acre tract of land; thence in an easterly direction along the lower or south line of said Higgins tract; thence in a southerly direction such a distance that a line drawn westerly parallel with said lower line of the Higgins tract to Cedar Lake; and thence up Cedar Lake with its meanders to the place of beginning, will include and embrace within said lines 200 acres of land."

On the 20th day of May, 1910, Johnson Higgins executed and delivered to the South Texas Development Company the following instrument:

"The State of Texas, County of Brazoria.

"Know all men by these presents: That we, J. A. Higgins of the county of Brazoria, state of Texas, for and in consideration of the sum of five and 00/100 dollars to us in hand paid by the South Texas Development Company, the receipt whereof is hereby acknowledged, have granted, sold, remised, released and forever quitclaimed and by these presents do grant, sell, remise, release and forever quitclaim unto the said South Texas Development Company, a private corporation, its successors and assigns, all our right, title and interest in and to that certain lot, tract or parcel of land described as follows: Situated in Brazoria county, Texas, and a part of the John McCloskey league, beginning at N. Higgins lower corner on Cedar Lake from which a cedar tree 10 inches in diameter bears N. 39 deg. E. 9 ft. marked X; thence N. 45 deg. E. 865 vrs. along the lower line of the N. Higgins tract to stake on edge of a field; thence south 45 deg. E. 32½ vrs. to another stake on edge of the field; thence N. 45 deg. E. 444 vrs. to corner of Ed. Bess 40-acre tract; thence S. 45 deg. E. 1042 vrs. to Winston line; thence S. 45 deg. E. to corner of

a 65-acre tract described in deed from South Texas Development Company to H. Masterson, filed for record in Brazoria county, Texas, November 13, 1907, recorded in Book 77, page 259 of Brazoria county deed records; thence south 45 deg. W. with the N. line of the said 65-acre tract to the line of the Ben Ward 60-acre tract; thence with the line of the said Ben Ward tract to its N. corner; thence south 45 deg. W. with the line of the said Ben Ward tract to Cedar Lake; thence with the meanders of Cedar Lake to the place of beginning, comprising within the aforesaid metes and bounds the 91-acre tract of land conveyed by H. Masterson to the South Texas Development Company by deed recorded in Deed Records of Brazoria County, Texas, book 67, page 544, and the portion of the 140-acre tract conveyed by said H. Masterson to the said South Texas Development Company by the deed above mentioned remaining in the said company after deducting 65 acres reconveyed to the said H. Masterson by the said company by the aforesaid deed, dated October 31, 1907, filed for record November 13, 1907, and recorded in Brazoria County Deed Records, book 77, page 259, to have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said South Texas Development Company, its successors, heirs or assigns forever, so that neither the vendors herein, nor their heirs, nor any other person or persons for them, or in their name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every one of them by these presents shall be excluded and forever barred.

"Witness our hands this —— day of May 20, A. D. 1910 (the word 'April' being struck out). A. J. Higgins.  Signed and delivered in the presence of ——."

After Masterson had purchased the one-half interest in the 200-acre tract from John A. Winston, above mentioned, to wit, on the 29th day of March, 1888, he conveyed to one Ben Ward 60 acres, described as being a portion of 200 acres set apart to John and Annie Winston by decree of the district court of Brazoria county, May term, 1883, and reciting in such conveyance that at that time he owned 125 acres of said 200-acre tract and that said 60 acres to be taken out of the 125 acres, by commencing on the bank of Cedar Lake on upper line of the 125 acres; "thence east along line dividing said 125 acres, and 75 acres of Annie C. Winston, to such a distance that a line at right angles to lower line of said 125 acres; and thence west to Cedar Lake; thence up Cedar Lake to beginning, will contain 60 acres."

It is apparent that after Masterson had sold the 60 acres to Ward he only owned 65 acres of the 200-acre tract, and that when he purchased the 75 acres thereof set apart to Annie Winston he owned 140 acres thereof, which he intended to and did convey to the South Texas Development Company by his deed of date September 18, 1905.

As already stated, at the time Masterson brought suit on the notes executed by Lucretia Higgins as a part consideration for her purchase of the 75 acres involved in the suit and at the time the sheriff conveyed said land to Masterson on the 1st day of March, 1892, appellee Johnson Higgins was residing in a small house on said land, claiming the premises under a verbal gift thereof by his mother, Lucretia Higgins. After Masterson purchased the land as above stated, he did not dispossess appellee, but permitted him to occupy the house and cultivate a small field thereon, which he continued to do until the house was blown down in the storm of September 8, 1900. After the house was blown down appellee rebuilt the same in 1900. While he was occupying said house he spoke of the premises as being his home, but it is not shown that he ever talked to H. Masterson about the land at any time; in fact, appellee testified that he had never talked to Masterson about the land. There was no evidence that H. Masterson knew that appellee rebuilt the house or had any information of any kind that appellee was asserting any adverse claim to the land as to him.

The appellee testified that his father died in 1885, and that he moved to the land in 1885 or 1886; that H. Masterson came down to his house while he lived there, but did not know that he was down there soon after he rebuilt the house; that he knew that Masterson was down there three or four times after his (appellee's) father died; that when he saw Masterson down there he was at appellee's mother's house.

There was no evidence that Mr. Masterson ever saw the house which appellee rebuilt or after it was rebuilt, or that had he seen same he would have known that the original house had been blown down and another rebuilt in its stead.

The case was tried before a jury and after both sides had closed their evidence, each party requested the court to instruct the jury to return a verdict in their favor. Both of these requests were refused, and the court submitted the cause to the jury upon several special issues, but instructed the jury that, if they should answer special issue No. 1 in the affirmative, they need not answer any of the other issues. Special issue No. 1 was as follows:

"Do you believe from the evidence that the defendant Johnson Higgins has been in peaceable and adverse possession of the land described in plaintiff's petition for a period of ten (10) years after March 1, 1892, and prior to March 17, 1910, cultivating, using, and enjoying same, and claiming the same under a survey and marked lines and corners, made more than ten (10) years prior to the last-mentioned date? Answer yes or no."

The jury answered such issue in the affirmative. Upon such answer, judgment was rendered, decreeing that the plaintiff, the Bank-

ers' Mortgage Company, take nothing by its suit against Johnson Higgins and A. F. Purdy, and that Johnson Higgins recover from said company title and possession of the land involved in the suit. From such judgment the Bankers' Mortgage Company has appealed.

Appellant contends that the court erred in not instructing a verdict in its favor upon its request therefor, in that the undisputed evidence shows that appellee Johnson Higgins went into possession of the land in controversy under and in privity with an executory contract of sale and purchase, being the deed with vendor's lien retained in favor of Annie C. Winston; that his possession as to such vendor and H. Masterson and his assigns, who were in privity with such vendor, was amicable and subordinate to the title of Annie C. Winston and those in privity with her, and could not become adverse until repudiated and notice of such repudiation was brought home to them, and in that there was no evidence showing that either Masterson or any of his assigns had any notice that appellee was at any time claiming adversely to them, or any of them.

By cross-assignment appellee insists that appellant could not recover under the evidence, and that the court erred in not instructing a verdict in his behalf upon his request therefor, in that appellant, the Bankers' Mortgage Company, has shown no title to the land in themselves, because the deed from H. Masterson to the South Texas Development Company, the predecessor in title of appellant, conveying the land, described no land so that it could be identified, and therefore appellee's possession was at all times adverse to appellant.

[1] Appellant insists that, if there is any merit in appellee's cross-assignment, which it denies, appellee cannot avail himself of such cross-assignment, in that said assignment was not filed in the trial court, and therefore same cannot be considered by this court.

[2] We overrule appellant's objection to the consideration of the cross-assignment. There is no law requiring that cross-assignments shall be incorporated in the transcript. Baum v. McAfee, 59 Tex. Civ. App. 55, 125 S. W. 984, at page 987; Yates v. Watson (Tex. Civ. App.) 187 S. W. 548.

In the case last cited it is said:

"Appellee filed * * * cross-assignments of error. Appellant objects to a consideration of these cross-assignments because not filed in trial court, contending that therefore we cannot consider them. There is no other showing about the matter. The cross-assignments do not have to be copied in the transcript; so, without some other showing that they were not filed in the trial court than the assertion in appellant's supplemental brief, the motion cannot be sustained."

[3] There is no showing in the present case, except the assertion in appellant's supplemental brief, that the cross-assignment was not filed in the trial court. Before taking up a consideration of appellant's contention we shall dispose of appellee's cross-assignment, for if it is to be sustained it will settle the controversy adversely to appellant's contention that appellee's possession of the premises from the 1st day of March, 1892, the time when Masterson purchased the same at sheriff's sale, to March 17, 1910, the time appellee executed the deed to the South Texas Development Company, was consistent with and subordinate to the title claimed by appellant, for, if appellant was not shown to have been holding under Masterson appellee's possession was not in privity with the same, but was adverse thereto.

In determining whether the deed from H. Masterson to the South Texas Development Company of date September 18, 1905, sufficiently described the 140-acre tract sought to be conveyed thereby, we should look to the deeds and other muniments of title hereinbefore set out.

The deed from Masterson to the South Texas Development Company conveys 140 acres out of a 200-acre tract which is described as lying just south of the south line of the 520-acre Higgins tract, with the south line of the Higgins constituting the north line of the 200-acre tract. We think the legal inference or presumption should be that Masterson by his deed to the South Texas Development Company conveyed all of that 140 acres of land owned by him within the bounds of a 200-acre tract lying just along the south line of the Higgins tract. This being true, we think the land conveyed could be identified by a resort to the record to ascertain what 200 acres was lying just south of the line mentioned out of which the 140 acres was to be taken, and if this can be done there would remain no uncertainty as to the land conveyed by Masterson's deed.

[4] The deed, as already stated, shows on its face that the 140 acres was to be taken from a 200-acre tract bordering on the south line of the Higgins 520-acre survey. Is it not admissible to look to the record to determine what 200 acres is so located? If we do so look, we will find, first, that it is the 200 acres set aside to J. A. and Annie C. Winston; and, second, that the same passed from John A. and Annie Winston to H. Masterson. The general rule as to the certainty required is that a deed is not void for uncertainty if from the description given in it the property can be located.

[5, 6] It is well settled that, where duly recorded deeds recite vendor's lien was retained to secure purchase-money notes, as does the deed from Annie C. Winston to Lucretia

Higgins, a subsequent purchaser, such as was Johnson Higgins, was charged with notice of the lien. Ater v. Knight (Tex. Civ. App.) 218 S. W. 648. And where a purchaser goes into possession with knowledge of purchase-money note and lien securing it, and that it must be paid, such purchaser holds in privity with the vendor and his possession is not inconsistent with the rights of the vendor or the holder of the note. Ater v. Knight (Tex. Civ. App.) 218 S. W. 648; Hardy v. Wright (Tex. Civ. App.) 168 S. W. 462; Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582; Id. (Tex. Civ. App.) 130 S. W. 1028; Shotwell v. McCardell, 19 Tex. Civ. App. 174, 47 S. W. 39; Smith v. Pate (Tex. Civ. App.) 43 S. W. 312; Wilson v. Nugent (Tex. Civ. App.) 91 S. W. 241.

[7] The consistent and subordinate relation mentioned above does not cease or possession become adverse until the purchase money is paid, or the lien released, or the claimant has repudiated the same and brought notice thereof to those holding under the original vendor. Ater v. Knight, and Hardy v. Wright, supra. Neither the purchaser from a vendor who reserves a lien, nor a purchaser from the first purchaser, can hold by limitation against the original vendor, or those holding under him unless the conditions above stated, which start limitation, exist. Pearson v. Boyd, 62 Tex. 544; Thompson v. Dutton (Tex. Civ. App.) 69 S. W. 641; Runge v. Gilbough (Tex. Civ. App.) 87 S. W. 833.

We have already stated that there was no evidence showing that Masterson ever had notice that appellee repudiated the fact that his holding was consistent and subordinate to Masterson's title, or that any such notice was brought home to those holding under Masterson prior to March, 1910.

In view of the law as established by the cases cited, and the evidence adduced, it was error for the court to submit to the jury the question as to whether or not appellee Johnson Higgins had been in adverse possession of the land involved, for a period of 10 years after March, 1892, and prior to March 17, 1910, and the answer of the jury that appellee had such adverse possession is contrary to both the law and the evidence.

We also find that there was no evidence showing a repudiation of the consistent holding of appellee above mentioned, brought home to appellant, or those under whom it held, after March, 1910, until about the year 1925, at which time appellee executed leases to Purdy and another.

[8] Under the facts stated, we think the court erred in not instructing a verdict for appellant upon its request therefor. We also think the court erred in refusing such requested instruction, for the reason that it is shown that appellee conveyed the land in question, by his deed of 1910, to the South

Texas Development Company, appellant's predecessor in title, notwithstanding appellee's contention that such deed passed no title to the Development Company because the undisputed evidence shows that at the time of the execution of the deed the land was the homestead of himself and his wife, and that his wife did not join in the execution thereof. A complete answer to such contention is that there was no plea, either directly or indirectly, that the land in question was at the time of the execution of the deed of 1910, or at any time, the homestead of appellee and his wife, and in the absence of such plea, appellee could not avail himself of such defense.

Having reached the conclusion that appellant holds title under H. Masterson; that appellee's possession was as a matter of law consistent with and not adverse to such title; that there was no evidence that appellee ever brought home to Masterson, or those holding under him that he repudiated such consistent possession until in the year 1925; and also that appellee, by his deed of 1910, conveyed the land to the South Texas Development Company, appellant's predecessor in title, we hold that appellee has no title to the land by limitation, and therefore the court should have instructed a verdict for appellant, upon its request therefor.

For the reasons above expressed, the judgment is reversed, and judgment is here rendered for appellant.

Reversed and rendered.

PER CURIAM. Rehearing denied.

GRAVES, J. (dissenting). Having refrained on original disposition from maturing the individual conclusions now expressed into a dissent, partly at least to await the fuller light of a rehearing, after that aid, I am unable either to yield or longer withhold them; they are:

1. Annie C. Winston did not assign the legal title to the land to H. Masterson along with the transfer of the vendor's lien notes to him, hence, up until his purchase thereof under his own foreclosure sale on March 1, 1892, he had no title whatever thereto, his sole right then being that of a lienholder to have it sold in satisfaction of the purchase-money notes held by him, and throughout that period there was in consequence no such privity of title or interest between him and Johnson Higgins as prevented the statute of limitation from running against him in favor of, or, as required, the latter to specially bring home to Masterson notice of the adverse character of his holding. Farmers' Loan & Trust Co. v. Beckley, 93 Tex. 267, 54 S. W. 1027; Smith v. Pate, 91 Tex. 596, 45 S. W. 6.; Robertson v. Wood, 15 Tex. 1, 65 Am. Dec. 140; White v. Cole, 87 Tex. 500, 29 S. W. 759; Russell v. Kirkbride, 62 Tex. 455; Stephens v. Matthews' Heirs, 69 Tex. 341, 6 S. W. 567;

Barrett v. McKinney (Tex. Civ. App.) 93 S. W. 241; Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705.

2. In the absence of a duty upon Johnson Higgins' part to bring home to H. Masterson, particularly, notice of his adverse holding of the land, the evidence abundantly justified, if it did not compel, the finding that his adverse possession against all the world (Masterson included) begun at some unfixed date (that is, when the notes were transferred to Masterson) prior to March 1, 1892—continued unbrokenly so from that time up until at least March 17, 1910, since the undisputed evidence shows that it was never disturbed, or in any way changed, prior to this latter date by a writ of possession or other action under Masterson's judgment of foreclosure. It therefore became wholly immaterial that the trial court limited the period of appellees' claimed limitation to the time between March 1, 1892, and March 17, 1910, since there was more than 10 years shown anyway. Thomson v. Weisman, 98 Tex. 172, 82 S. W. 503; Pendleton v. McMains, 32 Tex. Civ. App. 575, 75 S. W. 350.

3. The deed from H. Masterson to the South Texas Development Company, of date September 18, 1905, was void on its face, in that it neither itself so described any land nor furnished such means of describing any as that it could be identified on the ground, hence could not be aided by the consideration of extrinsic or parol evidence. Continental Supply Co. v. M., K. & T. Railroad Co (Tex. Com. App.) 268 S. W. 444; Id. (Tex. Civ. App.) 250 S. W. 1095; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Norris v. Hunt, 51 Tex. 609; Douthit v. Robinson, 55 Tex. 74; Pfeiffer v. Lindsay, 66 Tex. 125, 1 S. W. 265; Bassett v. Sherrod, 13 Tex. Civ. App. 333, 35 S. W. 316; Myers v. Maverick (Tex. Civ. App.) 27 S. W. 950; Curdy v. Stafford (Tex. Civ. App.) 27 S. W. 824; Crumbley v. Busse, 11 Tex. Civ. App. 323, 32 S. W. 441; Coker v. Roberts, 71 Tex. 602, 9 S. W. 667; Giddings v. Day, 84 Tex. 608, 19 S. W. 682.

4. That the instrument Johnson Higgins admitted having signed, bearing date May 20 (also referred to as being of date May 17), 1910, should not, in the circumstances, be given the effect of a conveyance of the title to the land here involved to the South Texas Development Company. His adverse holding of it for more than 10 years prior to this date referred to in paragraph 2 hereof, and found by the jury, was undisputedly the actual occupancy of it by himself and his family as their homestead, which tenure in fact so continued undisturbed, notwithstanding this instrument, up until this trial in 1925, thereby completing an unbroken period of 40 years. By the uncontroverted proof this document was signed on the premises by Johnson Higgins only without reading it, his wife also being there but not being asked to sign, was wholly without consideration, and, while not acknowledged, was executed by him under circumstances which, if that had been involved, would have raised the issue of duress.

There was, it seems to me, sufficient pleading upon appellees' part setting up the homestead claim of Johnson Higgins; the suit was regularly one in trespass to try title, the appellees' first, among other defenses, interposing a plea of not guilty; appellant then replied by supplemental petition, for the first time specifically declaring upon the instrument under consideration; to this, by supplemental answer, the appellees responded by repeating their plea of not guilty and specially pleading the homestead defense as follows:

"IV. The defendants especially deny that they were ever the tenant of H. Masterson or any one else under whom the plaintiff claims. The defendants say that Johnson Higgins entered into the possession of the land described in the plaintiff's petition and in this defendant's first amended original answer under a verbal gift from his mother and father in the year 1884 and made permanent and valuable improvements upon said property at the time and after such verbal gift and has continually remained in possession of said property from the time and after such verbal gift and has continually remained in possession of said property from the time that he entered on the place either in person or by tenant and such possession had not been disturbed. Defendants say that the possession of said Higgins was peaceable and adverse to H. Masterson and all others. Defendants say that the said Johnson Higgins resided upon said land, claiming the same as his own for over 30 years, and thereafter has been in peaceable and adverse possession of said land up until the present time, and the claim of the plaintiff or any one under whom the plaintiff claims was never heard of by the defendants until the Gulf Production Company discovered a salt dome and a prospective oil field in the neighborhood of the defendants' land, and the claim now by the plaintiff in this case is not made in good faith in an honest belief that they have any title to the land in controversy."

There was no exception to these averments, and, even if proof of the homestead claim could properly be said not to have been available under the reiterated plea of not guilty, they were clearly enough, I think, to let it in. That proof showed without contradiction that Johnson Higgins had then been in possession of and claiming this property as the home of himself and his family for 25 years. The title to it as a homestead had therefore long since been perfected.

Just how in such circumstances a purported conveyance by the husband alone can pass any title to the homestead does not readily occur. Bridges v. Johnson, 69 Tex. 714, 7 S. W. 506; Coler v. Alexander, 60 Tex. Civ. App. 573, 128 S. W. 664; Lumpkin v. Woods (Tex. Civ. App.) 135 S. W. 1139; Marble v. Marble,

52 Tex. Civ. App. 380, 114 S. W. 871; Durham v. Luce (Tex. Civ. App.) 140 S. W. 850; Crutcher v. Sanders (Tex. Civ. App.) 145 S. W. 658; Powell v. Ott. (Tex. Civ. App.) 146 S. W. 1019; Harle v. Harle (Tex. Civ. App.) 166 S. W. 674; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Clark v. Tulley (Tex. Civ. App.) 200 S. W. 605; Constitution of Texas, art. 16, § 50; Revised Statutes of 1925, art. 1300; Hennessy v. Savings & Loan Co., 22 Tex. Civ. App. 591, 55 S. W. 124; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 509.

5. This instrument from Johnson Higgins, therefore, not standing in the way, and the 10 years' period of limitation having been completed under the jury's verdict prior to its date, nothing was left that could have properly caused the denial of a judgment in favor of the appellees.

Against the ever-steady pressure of individual duties of office, the privilege that was much desired of elaborating upon these views has been denied; but under them, whatever of error may have inhered in any of the learned trial court's theories in submitting the cause as was done, its judgment should have been affirmed. This protest is earnestly entered at this court's refusal to grant the motion for rehearing, and so order.