HIGGINS et al. v. BANKERS' MORTGAGE CO. (No. 1175—5162.)

Commission of Appeals of Texas, Section A. Feb. 13, 1929.

John B. Warren, of Houston, and J. T. Loggins, of Angleton, for plaintiffs in error.

Harry Holmes, of Houston, and A. R. Rucks, of Angleton, for defendant in error.

NICKELS, J. In trespass to try title brought by Bankers' Mortgage Company, Higgins pleaded the bar of, and title by, limitations. The jury, in response to special issue No. 1, found adverse possession, etc., for a period of 10 years or more. Some further issues were included in the charge given; but the jurors were told therein that they need not be considered, if adverse possession (inquired about in special issue 1) be found, and answers were not made. Judgment for Higgins resulted. Upon appeal the judgment was reversed, and judgment for Bankers' Mortgage Company was rendered by the Court of Civil Appeals—Judge Graves dissenting. 4 S.W.(2d) 102. Reference is made to the opinion of that court for a more detailed statement of the case.

1. September 18, 1905, Masterson executed his deed to the predecessor of Bankers' Mortgage Company, wherein it is declared he "granted, sold and conveyed * * * the following described property in Matagorda and Brazoria counties, to-wit: 140 acres out of the following described 200 acre tract: Beginning on Cedar Lake at the S. W. corner of the Higgins 520 acre tract of land, thence in an easterly direction along the lower or south line of said Higgins tract; thence in a southerly direction such a distance that a line drawn westerly parallel with said lower line of the Higgins Tract to Cedar Lake and thence up Cedar Lake with its meanders to the place of beginning, will include and embrace within said lines 200 acres of land."

The language quoted includes every descriptive element in the deed. Its import is this: (a) The southwest corner of the "Higgins 520 acre tract" is the northwest corner of the "200 acre tract" and that corner is on "Cedar Lake"; (b) for an unnamed distance the "southerly" line of the "Higgins 520 acre tract" is the "northerly" line of the "200 acre tract"; (c) the "southerly" and "northerly" lines of the "200 acre tract" are parallel; (d) the "easterly" line of the "200 acre tract" intersects the "northerly" and "southerly" lines at right angles; (e) the other boundary is (for an unnamed distance) the shore of "Cedar Lake"; and (f) the quantity is 200 acres.

When the matter of the location of the "200 acre tract" is considered with sole reference to the language of the deed, it becomes manifest that an infinite number of "easterly" and "southerly" lines might be platted so as that each set (with a portion of the "southerly" line of the "Higgins 520 acre tract" and the shore of "Cedar Lake") would define 200 acres of land.

█ If we look beyond the deed we find that the "southerly" line of the "Higgins 520 acre tract" extends (about) 1042 varas eastward from the southwest corner of that tract, and that the "easterly" shore of "Cedar Lake" ranges (generally) southwestward for a considerable (but otherwise unknown) distance.

Hence, there is naught in length of available shore line or extent of the "southerly" side of the "Higgins 520 acre tract" to supply that data which is essential to ascertainment of the location of the northeast corner of the 200-acre tract or location of the point at which its "southerly" line would intersect Cedar Lake's shore line. It results that such references to extrinsics as are made in the deed do not so operate as to restrict infinity of possible applications of the description stated in the language of the parties to the conveyance. Resort to extrinsic evidence, where proper at all, is not for the purpose of creating a description, Pomeroy v. Pearce (Tex. Com. App.) 2 S.W.(2d) 431, 433; it is for the purpose of ascertaining whether "from the facts given in the description in the deed the property intended to be conveyed can be identified with certainty" (Hermann v. Likens, 90 Tex. 448, 453, 39 S. W. 282), i. e., with "reasonable certainty," Mansel v. Castles, 93 Tex. 414, 416, 55 S. W. 559. Cf. Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Continental Supply Co. v. M. K. & T. Ry. Co. (Tex. Com. App.) 268 S. W. 444.

We are inclined to the belief that the deed is void for patent ambiguity. If, however, its data be sufficient to justify recourse to extrinsic evidence, such facts as are disclosed in the record and which properly might be examined on this point do not (for reasons stated) make reasonably certain that which was left uncertain. See McMurray v. Standley (Tex. Com. App.) 1 S.W.(2d) 592.

What has been said has reference, of course, to description of the 200-acre tract, which is supposed to include the 140 acres whose conveyance was attempted. In respect to sufficiency of description of the 140 acres (upon assumption of sufficiency of description of the 200 acres), we neither express nor imply an opinion.

2. May 20, 1910, Johnson Higgins signed (but did not acknowledge) a "deed" including recitals that (for a consideration of $5) he thereby "granted sold * * * and forever quit-claimed," to the corporation of which Bankers' Mortgage Company is successor in interest, all "right, title, and interest in and to" a large tract (sufficiently described), of which the land in controversy is a part.

If he had any "right, title, and interest" at all, the land in controversy then and for a long time theretofore had been the homestead of himself and family. His wife was then (and at date of trial) living, and the family occupied and used this land.

While we doubt its occurrence, we assume in favor of the Mortgage Company a sufficient delivery of the "deed."

The homestead, thus circumstanced, cannot be conveyed by the husband (at least without consideration or for a consideration having no relation to purchase-money obligations or other debts). Article 1300, R. S. 1925. As a conveyance, the "deed" failed. And, since an ex-

ecutory contract of sale cannot be enforced, the "deed" failed also as "a contract," despite the letter of article 1301, R. S. 1925. This "deed" then neither passed title (or right to title) nor made an estoppel by contract.

Higgins is a negro, born in 1865, in Brazoria county, a resident of the county continuously since birth, and somewhat illiterate. His wife is "kinder superstitious about those things" (i. e., "leases," etc.) and "all they got to go by is to trust their white people when they come to them with those things." Signature (and whatever delivery there was) of the "deed" is thus postured in Higgins' testimony: "Mr. Martin and two other men came there and brought me a paper and asked me, he says: 'Johnson, I got a paper I want you to sign.' I says 'all right.' Along about that time down in our neighborhood, any of our white people could bring a paper out and we didn't hesitate to sign it, because we hadn't never been fooled up about anything. * * * He pulled it out and handed it to me and I signed it. I did not read it. He did not read it to me. I didn't know what it was. As to why I signed it,—well I just simply signed it. * * * I signed it because I was a little kinder shy of Mr. Martin. * * * Mr. Martin is a pretty tough man down in that country among colored people. As to whether or not Mr. Martin had any weapons at that time, yes, sir, he had a six-shooter and a Winchester on his saddle also; and those men that came down with him had guns; they could have been hunting, they had their dogs with them. * * * There was not anything paid to me at the time of signing it."

We do not stop to inquire about possible bases (in proof) of estoppel in pais incident to signature of the "deed." We have given the foregoing recitals to show that in any event there is evidence tending to negation of such an estoppel.

Bankers' Mortgage Company introduced a "letter," addressed to Wren, who was then manager of its predecessor in interest, and reading as follows:

"3/17/1910 Cedar Lake Tex

"Mr. W. B. Wren

"Dear Sir I write to you in the regards about your land as to know if you would rent this I am living on to me for this year I am willing to pay a reable rent for it is about 15 acres in colovaition I willing to pay $25.00 for it this year and allso would like to live on the plase I have all of my crop up and lot of children So Mr Will Marton told me that he had paper to put me and Josph and Uncle Pompey off the plase So I went and seen him and he told me to write you at once about it and would give me time to write you and see you about it as he likes me verry well So if this letter if except please sir write me word and send the note to Mr. Will Marton I know the land is your and I will give the land up to you in the Fall And if you will rent then I

would like to stay if I can and if not write me at once Mr. Marton told me to tell you write to him to So this all I have just rebuild the house and fence up since the Storm So I hope we can come an agreement

"Yours truly      Johnson Higgins."

If it be assumed that estoppel, precluding dispute of Bankers' Mortgage Company's title, might be predicated in the supposed act of preparing and transmitting the letter, and in its content, there would yet be an issue of fact arising out of Higgins' denial of authorship, etc.

■ The trial judge did not submit an issue of estoppel in pais. Nor was such an "issue" framed and requested by any party. On appeal claim of sufficient title by estoppel is not available, therefore, to Bankers' Mortgage Company. Ormsby v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591.

As noted, the first special issue inquired about 10-years' adverse possession, and the jury's answer established such possession. In connection with the "issue," the jury was instructed that, if such an answer were given, it need not answer "any of the following issues." Amongst the "following issues" were these: (a) "Did * * * Johnson Higgins rent the land in controversy * * * from South Texas Development Company in 1910?" (b) "Did * * * Johnson Higgins write the letter * * * dated March 10, 1910, and addressed to W. B. Wren?" In relation to estoppel in pais, those "issues" did no more than inquire about certain evidentiary "facts" which, of themselves, could not be determinative. Such objections, as were made by counsel for Bankers' Mortgage Company, to submission of additional issues only on condition that "issue No. 1" be answered otherwise than in the manner answered, were restricted to withdrawing from the jury consideration of the supposed effect of "renting" and writing the letter on the issue of adverse possession. And the only objection made in any wise touching estoppel was confined to, and predicated upon, the assertion that, by the deed of May 20, 1910, Higgins' claim of adverse possession is precluded—that assertion, of course, having no relation to estoppel in pais. We do not find, in the objections made or in the portions of the charge to which they are directed, ground for saving Bankers' Mortgage Company from the waiver (of estoppel in pais, as basis for its claim of title sufficient to support a judgment for it), which appears in consequence of the rule of Ormsby v. Ratcliffe, supra.

3. All possible bases of right in Bankers' Mortgage Company have been mentioned in "1" and "2" above; because of that situation, and for the reasons above given, it did not establish title essential to any relief.

4. Numerous alleged errors were presented in the Court of Civil Appeals by Bankers' Mortgage Company. But they have reference to the trial and disposition of Higgins' claim of prescriptive title, and, because Bankers' Mortgage Company did not show right to the land in any event, those errors, if they happened, were innocuous.

5. We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, as recommended by the Commission of Appeals.